IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **ACUMEN ENTERPRISES, INC.**, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. **3:11-CV-619-L** |
| v. § | |
| § | |
| **JONATHAN MARK MORGAN**, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion for Temporary Restraining Order Without Notice, filed March 28, 2011. After carefully considering the motion, record, and applicable law, the court **denies** Plaintiff's Motion for Temporary Restraining Order Without Notice.

**I.     Factual and Procedural Background**

Plaintiff Acumen Enterprises, Inc. ("Plaintiff" or "Acumen") filed its Original Complaint and Request for Injunctive Relief in this court on March 28, 2011. Plaintiff brings claims against Defendant Jonathan Mark Morgan ("Defendant") for federal trademark infringement, federal unfair competition, violation of the Anti-Cybersquatting Protection Act (the "ACPA"), common law trademark infringement and unfair competition, dilution under the Texas Business and Commerce Code, tortious interference with business relationships, common law tort of passing off, and a request for permanent injunctive relief. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1331 because this action arises under federal law relating to trademarks.

Acumen began doing business in Duncanville, Texas, and was incorporated in November 2001. Plaintiff provides general construction and mechanical, electrical, and plumbing services

under the mark "ACUMEN ENTERPRISES" and has been in business for nearly ten years. Acumen is also licensed to do business in Oklahoma, Louisiana, and New Mexico under its ACUMEN ENTERPRISES mark. Plaintiff registered the domain name <acumen-enterprises.com> on November 30, 2001, and has been using it in commerce continuously since that date.

On July 21, 2010, Defendant, a recent college graduate living in Indiana or Ohio, registered the domain name <acumenenterprises.com> through the domain registrar GoDaddy.com. Defendant soon thereafter began intercepting e-mails intended for Acumen because of a "catch-all" e-mail option he enabled with GoDaddy.com, which allowed him to receive all e-mails sent to *any* e-mail address that used the <acumenenterprises.com> domain name. Thus, any time that one of Acumen's current or prospective customers (in addition to any new business contacts or potential business opportunities) neglected to hyphenate "acumen" and "enterprises" in an outgoing e-mail, Defendant would receive it. On multiple occasions, Defendant would respond to these intercepted e-mails with antagonistic or abrasive remarks and would make no effort to clarify that the e-mail senders had reached the wrong person. Today, Defendant's website advertises a specialty in engineering, design, robotics, and automation. The website further states that Defendant is the "founder and owner of Acumen Enterprises."

Plaintiff requests an *ex parte* temporary restraining order out of concern that, if notified of this action, Defendant would immediately transfer ownership of the <acumenenterprises.com> domain name beyond the confines of this jurisdiction and continue to harass Acumen's e-mail contacts in retaliation for this action. To this end, Acumen requests that the court grant its motion for temporary restraining order, order GoDaddy.com to disable the <acumenenterprises.com>

domain name, and order Defendant to cease and desist sending any e-mail to any of the e-mail addresses he received as a result of his enabling the "catch-all" feature of his GoDaddy.com account.

## II. Application for Temporary Restraining Order

### A. Legal Standard

The purpose of a temporary restraining order is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Any temporary restraining order, therefore, is a temporary measure to protect rights until a hearing can be held.

There are four prerequisites for the extraordinary relief of a temporary restraining order or preliminary injunction. To prevail, a plaintiff must demonstrate: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (iii) that greater injury will result from denying the temporary restraining order than from its being granted; and (iv) that a temporary restraining order will not disserve the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline,* 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction.

### B. Analysis

Plaintiff contends that it has established each of the four elements, and therefore a temporary restraining order is warranted. The court analyzes the elements separately.

#### 1. Substantial Likelihood of Success on the Merits

Acumen contends that it is likely to succeed on the merits of its Anti-Cybersquatting claim. Liability attaches under the ACPA if: (1) the defendant has a bad faith intent to profit from another's trademark and registers, traffics in, or uses that trademark in a domain name; (2) the trademark is distinctive or famous at the time the domain name was registered; and (3) the domain name is identical or confusingly similar to the trademark. 15 U.S.C. § 1125(d)(1)(A).

Here, the court believes that the ACUMEN ENTERPRISES mark was unquestionably distinctive at the time the <acumenenterprises.com> domain name was registered by Defendant and that the domain name is identical to the mark, or at least confusingly similar to the mark. The only question is whether Defendant possessed bad faith intent to profit from the mark. In considering the ACPA's statutory factors to discern bad faith intent, the court believes that a plausible case could be presented to the jury and that success on the merits is possible. The court is reticent, however, to make a finding that the likelihood of success is *substantial*.

Based on the court's perusal of Defendant's website, there is no indication how long he has been doing business under the "Acumen Enterprises" name, and the court questions any trademark rights that he may have. Further, the <acumenenterprises.com> domain name does not contain Defendant's legal name, and he has offered to sell the domain name to Plaintiff for $20,000 and then $25,000, more than two thousand times his costs to register the domain. There is simply no indication in the record, however, that Defendant specifically sought the domain name with the

intention to profit at Plaintiff's expense. The parties appear to be engaged in two different business industries with mechanical, electrical, and plumbing services on the one hand, and engineering, robotics, and design services on the other. "Acumen" is a positive term that is defined as "keen insight" or "shrewdness," and the court can easily see why anybody would choose that for a business name. Although the parties appear to have similar appreciation for the term, that appreciation does not necessarily mean that Defendant was "cybersquatting" on a domain name that Plaintiff would eventually seek to purchase. This question is close enough that a jury could rule for or against Plaintiff. Thus, Plaintiff has not even shown that more likely than not a jury would rule in its favor, much less that a substantial likelihood of success on the merits exists.

### 2. Substantial Threat of Immediate and Irreparable Harm

Plaintiff contends that its potential harm is immediate and irreparable because Defendant could transfer ownership of the domain name if a temporary restraining order is not issued, which would prompt Acumen to file more lawsuits to "chase it down." Plaintiff also argues that its reputation and company goodwill will continue to be tarnished because of Defendant's abrasive e-mails to unknowing senders. The court is unpersuaded that these alleged harms are immediate and irreparable because they are speculative.

Plaintiff understandably assumes the worst about Defendant. The court, however, believes that notice of this lawsuit would be just as likely to prompt Defendant to respond positively and reasonably with respect to settling this matter rather than further agitate it by harassing Acumen's customers or transferring ownership of the domain name. Moreover, as a practical matter, if Defendant did transfer ownership of the domain name, the court is at a loss to understand why that would not render Plaintiff's claims in this matter moot—ostensibly, Acumen would then have the

opportunity to acquire the domain name from the new registrar. Plaintiff has failed to carry its burden on this factor.

### 3. Harm to Plaintiff versus Harm to Defendant

The court appreciates the potential harm that arises from Defendant's conduct in this case. If it were to grant Acumen's *ex parte* temporary restraining order, however, the court would essentially be seizing Defendant's property along with any legitimate business opportunities that it has generated for him without even hearing his side of the story. Further, although inconvenient, the court does not believe that any harm resulting from Defendant's e-mails is incurable. Plaintiff could, for example, notify all of its business contacts of the importance of hyphenating "acumen" and "enterprises" if they intend to reach Plaintiff via e-mail due to a separate engineering and robotics business operating under the same name. The court considers the harm on both sides here to be roughly equivalent, and therefore Plaintiff has failed to carry its burden on this factor.

### 4. The Public Interest

In light of its analysis of the three factors above, the court believes that it need not address the effect an *ex parte* temporary restraining order would have on the public interest. The court is unpersuaded that Plaintiff has established a substantial likelihood of success on the merits, a substantial threat of immediate and irreparable harm, or greater injury resulting to it than Defendant if a temporary restraining order is not granted. Therefore, an *ex parte* restraining order is inappropriate.

## III. Conclusion

For the reasons stated herein, the court **denies** Plaintiff's Motion for Temporary Restraining Order Without Notice.

**It is so ordered** this 29th day of March, 2011.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge