**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ACUMEN ENTERPRISES, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:11-CV-619-L** |
| | § | |
| **JONATHON MARK MORGAN**, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant's Jonathon Mark Morgan's Motion to Dismiss Plaintiff's Claims Under Rule 12(b), filed April 18, 2011, and Defendant Jonathon Mark Morgan's Amended Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) and Rule 12(b)(3), or in the Alternative to Transfer Venue Under 28 U.S.C. § 1404(a), filed April 19, 2011. After carefully reviewing the motion, briefing, pleadings, evidence, and applicable law, the court **denies** Defendant Jonathon Mark Morgan's Amended Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) and Rule 12(b)(3), or in the Alternative to Transfer Venue Under 28 U.S.C. § 1404(a) and Brief in Support (Doc. 13), and **denies as moot** Defendant's Jonathon Mark Morgan's Motion to Dismiss Plaintiff's Claims Under Rule 12(b). (Doc. 12).

**I.      Factual and Procedural Background**

Plaintiff Acumen Enterprises, Inc. ("Acumen") brought this action against Defendant Jonathon Mark Morgan ("Morgan") on March 28, 2011, for cybersquatting, trademark infringement, unfair competition, trademark dilution, deceptive trade practices, and intentional interference with prospective economic advantage. Acumen is a Texas corporation located in Desoto, Texas, and provides general construction, mechanical, electrical, and plumbing services, and operates under the

**Memorandum Opinion and Order - Page 1**

mark ACUMEN ENTERPRISES. Acumen began its business in Texas in November 2001. Since that time, Acumen has increased its revenue from $55,604 to more than six million and has grown in size from three employees to more than fifty employees. In the ten years it has been doing business, it has used the ACUMEN ENTERPRISES mark and also registered the domain name <acumen-enterprises.com>, which it has been using consistently since November 2001.

Morgan, who resides in Ohio, paid $11.99 to register the domain <acumenenterprises.com> through the domain register GoDaddy.com in July 21, 2010. Acumen contends that Morgan registered the domain using Acumen's mark without its consent. Acumen learned from its customers and suppliers that they had inadvertently sent e-mails to Morgan's <acumenenterprises.com> account. Shortly after registering the <acumenenterprises.com> domain name, Morgan began responding to these e-mails using derogatory language and an abrasive tone without clarifying in most instances that he was not the party sought. In addition, Morgan began proactively sending unsolicited nuisance e-mails to Acumen's clients.

In response to an e-mail from the Desoto, Texas Chamber of Commerce about possible membership, Morgan responded "No. Do not contact me. Tell your mother I said hello . . . so hot right now." Pl.'s Compl. 5-6, ¶ 19. In response to e-mails between Acumen employees and contractors concerning work being performed on the Majestic Theater in Dallas, Texas, Morgan replied "I don't have, nor do I want some dumb transmitter." *Id.* 6, ¶ 20. In response to an e-mail by a business attempting to contact Acumen about payment of an invoice, Morgan stated "You want me to pay you??? For what?! I'm not paying you anything!" *Id.* 6, ¶ 21. Confused, the business attempting to contact Acumen replied, "Excuse me? Is this Acumen Enterprises? Is Jeannine still there?" *Id.* Morgan replied, "Yes, this is Acumen Enterprises, Jeannine? Scram?" *Id.* In response

**Memorandum Opinion and Order - Page 2**

to yet other e-mails, Morgan responded, "You're retarded.  Stop emailing me." *Id.* 7, ¶ 23(b).  In an unsolicited e-mail, Morgan also sent approximately thirty Acumen customers a link to a Youtube.com video of Rick Astley singing "Never Gonna Give You Up." *Id.* 6, ¶ 22.  While not offensive, Acumen contends that this and other e-mails that Morgan sent to its customers and business contacts damaged and tarnished its reputation and Acumen's goodwill because the e-mails appear to have been endorsed by Acumen.  According to a declaration by Acumen president and chief executive officer G. Wayne Boyter, Jr., Acumen does business in Oklahoman, Louisiana, and New Mexico, but most of its business is in Texas, and a large number of the Acumen customers is in the Dallas County area.

In early February 2011, Morgan contacted Acumen using the "info.acumen-enterprises.com" e-mail address located on Acumen's website.  *See* Pl.'s App.  065.  The Acumen web page containing this e-mail address also includes Acumen's business addresses in Texas.  Morgan explained that he was continuing to receive a great deal of Acumen's e-mail traffic.  In March 2011, Acumen told Morgan that it was getting an increasing number of telephone calls from upset customers and suppliers about Morgan's abusive e-mails.  Acumen requested Morgan to "ratchet down the abusive language" and conduct himself in a professional manner until the parties were able to resolve the matter.  Pl.'s App. 072.  Acumen also requested that Morgan turn off the "catch-all" feature on his account so that any misdirected e-mails would be returned to the senders as undeliverable.  Morgan declined and, according to Acumen, attempted to extort $20,000 from Acumen in exchange for the domain name.  Acumen offered Morgan $1,000 to buy the domain.

**Memorandum Opinion and Order - Page 3**

Morgan responded that he would not sell the domain for less than $25,000. Acumen countered with an offer of $2,000 but Morgan did not respond.

Acumen therefore filed this lawsuit and moved for a temporary restraining order and injunction to prevent Morgan from continuing to interfere with Acumen's business and customers, including interference that has caused Acumen to lose potential customers who will not follow-up after receiving abusive e-mails from Morgan. Shortly thereafter, the parties filed an agreed motion to enjoin Morgan temporarily from using the <acumenenterprises.com> domain name and sending or responding to e-mails from this account.

## II.     Motion to Dismiss for Lack of Personal Jurisdiction

### A.     Rule 12(b)(2) - Standard for Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

**Memorandum Opinion and Order - Page 4**

After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir.

1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id*. (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)). Acumen does not dispute that the court lacks general jurisdiction over Morgan. The court therefore considers only whether it has specific jurisdiction over Morgan.

**B.     Analysis**

Morgan contends in his motion that he has never lived in or done business in Texas and only traveled to Texas once for personal reasons unrelated to this lawsuit. Morgan does not dispute that he responded to the unwanted Acumen e-mails with "banal and dismissive replies," but asserts that he only did so to get the e-mails to stop. Def. Decl. 6, ¶ 20. He maintains that it was never his intention to tarnish Acumen's business reputation and his goal was not to extort money from Acumen but to offer a means of resolving the mix-up. Morgan further contends that his website is passive and any attempt by the parties to contract regarding the purchase of the domain name at issue is not sufficient to establish minimum contacts necessary for personal jurisdiction. Acumen counters that its claims are not contractual in nature but instead for trademark infringement, cybersquatting, and other torts for which it was harmed in Texas as a result of Morgan tortious activities. Acumen therefore contends that the court has specific jurisdiction over Morgan based on what is known as the "effects" doctrine.

Under the "effects" doctrine, an allegation of an intentional tort and resulting injury in the forum state is sufficient to support personal jurisdiction if the defendant expressly and intentionally directed his conduct toward the forum state. *See Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773 (5th Cir. 1988). Specific jurisdiction may arise "without the nonresident defendant's ever stepping foot upon the forum state's soil or may arise incident to the commission of a single act directed at the forum." *Bullion*, 895 F.2d at 216 (citations omitted). "Purposeful forum-directed activity—even if only a single substantial act—may permit the exercise of specific jurisdiction in an action arising from or related to such acts." *Ham*, 4 F.3d at 415-16.

Acumen alleges that Morgan intentionally directed his tortious conduct toward Texas by contacting Acumen's customers and suppliers. Although Acumen does not state specifically in its Complaint that its customers (potential and existing), suppliers, and business contacts that were contacted by Morgan are located in Texas and much of the contact information for these persons and businesses contained in the e-mails attached to Acumen's Complaint is redacted, Boyter's declaration states that a large number of Acumen customers are in Texas, and two of the unredacted e-mails reflect that Morgan sent abusive e-mails to Acumen's customers, suppliers, or business contacts using his <acumenenterprises.com> domain. Notably, these and other abusive e-mails were sent by Morgan *after* he notified Acumen that he was receiving e-mails intended for Acumen. To contact Acumen, Morgan used the contact information on Acumen's website, which contains Acumen's Texas business address. He therefore knew that he was not only dealing with a Texas corporation but also its customers, suppliers, and other business contacts that are located in Texas.

Moreover, although Morgan denies that he intended to tarnish or otherwise harm Acumen, he concedes that he meant to send the abusive e-mails using his <acumenenterprises.com> email account, even though he knew the e-mails were intended for Acumen. In addition, Morgan in most instances did not attempt to explain or clarify in his abusive e-mails that he was not affiliated with Acumen. The court therefore concludes that it has specific jurisdiction because Morgan intentionally directed his tortious activities toward Texas with the knowledge that his actions would likely injure Acumen in Texas.

### III. Motion to Dismiss based on Improper Venue

Morgan moved to dismiss for lack of proper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. He therefore has the burden to demonstrate affirmatively that Acumen

filed this lawsuit in an improper venue. *International Truck & Engine Corp.*, 259 F. Supp. 2d at 558. Venue is proper in the Northern District of Texas, because "a substantial part of the events or omissions giving rise to the claim occurred" in the district. 28 U.S.C. § 1391(b)(2).

Morgan contends that venue is improper because a substantial part of the events or omissions giving rise to Acumen's contract claim and related negotiations occurred in Ohio, Indiana, or states other than Texas. As discussed above, however, Acumen's claims against Morgan are not contractual in nature but instead are based on Morgan's alleged tortious internet activity that was directed toward Acumen, its customers and business contacts in the Northern District of Texas. Moreover, Acumen, who is doing business in the Northern District of Texas, was allegedly injured in this district. Morgan has therefore failed to show that a substantial part of the events or omissions giving rise to Acumen's claims did not occur in the Northern District of Texas. Accordingly, Morgan has not met his burden of demonstrating affirmatively that the Northern District of Texas is an improper venue for Acumen's causes of action. For these reasons, the court determines that venue is proper in the Northern District of Texas.

## IV.   Motion to Transfer Venue

Morgan contends in the alternative that a venue transfer to the Southern District of Ohio is warranted for the convenience of the parties and witnesses, and in the interest of justice.

### A.   Applicable Standard for a Section 1404(a) Transfer

With respect to section 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). In applying section 1404(a), a district court is to first determine "whether the judicial district to which transfer is sought would have been a district

in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *In re Horseshoe Entm't*, 337 F.3d 429, 432 (5th Cir.), *cert. denied*, 540 U.S. 1049 (2003)). Once this initial determination is made, a district court

> turn[s] to the language of § 1404(a), which speaks to the issue of "the convenience of parties and witnesses" and to the issue of "in the interest of justice." The determination of "convenience" turns on a number of private and public interest factors, none of which [is] given dispositive weight. The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*In re Volkswagen AG*, 371 F.3d at 203 (citations omitted).

Transfer of venue pursuant to 28 U.S.C. § 1404(a) is at the discretion of the court, considering "'[a]ll relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847 at 370 (1986)). The moving party bears the burden of demonstrating that a change of venue is warranted. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966); *Carlile v. Continental Airlines, Inc.*, 953 F. Supp. 169, 170 (S.D. Tex. 1997).

A plaintiff's choice of forum is entitled to some deference and generally should not be disturbed unless the balance of factors strongly favors the moving party, *see Houston Trial Reports, Inc., v. LRP Publ'ns, Inc.*, 85 F. Supp. 2d 663, 667 (S.D. Tex. 1999); however, a court may not

**Memorandum Opinion and Order - Page 10**

attribute "decisive weight" to a plaintiff's choice of forum. A "[p]laintiff's choice of forum is clearly a factor to be considered but in and of itself is neither conclusive nor determinative." *In re Horseshoe Entm't*, 337 F.3d at 434.

### B. Analysis

The court first notes that this suit could have been brought in the Southern District of Ohio since Morgan resides there and he is the only defendant. *See* 28 U.S.C. § 1391(a)(1). For the reasons that follow, however, the court determines that transfer to the Southern District of Ohio is not warranted based on the court's consideration of the private interest factors addressed by the parties.*

#### 1. Access to Sources of Proof

Morgan contends that "virtually all of the proof in this case is located in Ohio," because that is where all of the records for his work and business are located. Morgan further contends that he will have to transport all such proof to Texas if the suit is litigated there. Acumen responds that there are also numerous sources of proof in Texas, that is, all of the persons Morgan contacted and harassed. Even assuming that all of Morgan's records are in Ohio, this factor has diminished importance because most records today are produced in electronic format. As a result, the location of records becomes largely irrelevant. Moreover, even if the documents are not stored electronically and cannot be readily converted and produced in electronic format, Morgan has not presented evidence, in the form of an affidavit or otherwise, to demonstrate that the records are so voluminous that their production would be unduly burdensome, expensive, or inconvenient. Thus, the access to sources of proof factor does not favor transfer to the Southern District of Ohio.

---

* As herein explained, the parties only addressed the private interest factors. Neither addressed the public interest factors applicable to transfer of venue under section 1404(a).

**Memorandum Opinion and Order - Page 11**

### 2. Compulsory Process to Secure Attendance of Witnesses

Morgan contends based "on information and belief, [that] none of the key witnesses, except those who work for Plaintiff, will be susceptible to process compelling their testimony in the Northern District of Texas." Def.'s Mot. 11. There is no evidence to support Morgan's conclusory assertion in this regard. Moreover, both parties have the means to obtain depositions of witnesses. Accordingly, the court determines that this factor does not favor transfer to the Southern District of Ohio.

### 3. Cost of Witness Attendance

Morgan contends that even if witnesses can be compelled to testify in Texas, the costs associated with such testimony would far outweigh the costs associated with Acumen's travel to Ohio. Morgan further asserts that Acumen's employees are the only material witnesses located in Texas. Morgan also maintains that he has limited resources, whereas "on information and belief," Acumen has substantial resources. Def.'s App. 5, ¶ 17. For all of these reasons, Morgan contends that the convenience of parties and witnesses, and related prohibitive costs, support transfer of the case to Ohio. Acumen counters that it employs at least forty-six more persons than the four witnesses identified by Morgan. Acumen asserts that its employees and the numerous other persons Morgan contacted are all located in Texas.

Morgan's declaration only identifies four witnesses, including himself. Of the four witnesses identified, he is the only witness located in Ohio. The other witnesses identified by Morgan reside in Indiana and Brazil. On the other hand, virtually all of Acumen's witnesses, including its employees, are located in Texas. Moreover, Morgan's highly conclusory statements regarding his

and Acumen's financial wherewithal are not sufficient to satisfy his burden as to this factor. As a result, this factor does not weigh in favor of transferring the case to the Southern District of Ohio.

### 4. Considerations Regarding Speed and Expense of Trial

Other than his arguments regarding costs already mentioned, Morgan does not specifically address this factor. For the reasons stated, the court determines that the evidence, or the lack thereof, regarding costs associated with a trial in Texas does not support transfer of the case to the Southern District of Ohio.

Accordingly, the convenience of the parties and witnesses weighs against transferring venue to Ohio. In addition, Acumen's choice of forum is entitled to some deference and generally should not be disturbed unless the balance of factors strongly favors the moving party. *In re Volkswagen of America,* Inc., 545 F.3d 304, 315 (5th Cir. 2008) ( "*Volkswagen II*" ) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)) (emphasis added). The minimal evidence and the balance of private factors here do not favor Morgan as the moving party.

Moreover, Morgan does not address the public factors and, thus, the court has no basis to consider them. As a result, the public factors do not support transfer of venue to the Southern District of Ohio. Having failed to show that the Southern District of Ohio is more convenient than the venue chosen by Acumen, the court concludes that, in the interest of justice, the forum for this action should remain in the Northern District of Texas. Morgan has not presented sufficient grounds to justify disturbing Acumen's choice of venue.

### V. Conclusion

For the foregoing reasons, the court determines that Morgan has sufficient contacts with the State of Texas to establish specific jurisdiction, and venue is proper. In addition, the court

**Memorandum Opinion and Order - Page 13**

determines that Morgan has failed to meet his burden of demonstrating that a transfer of venue is clearly more convenient for the parties and witnesses and in the interest of justice. Accordingly, the court **denies** Defendant Jonathon Mark Morgan's Amended Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) and Rule 12(b)(3), or in the Alternative to Transfer Venue Under 28 U.S.C. § 1404(a), and **denies as moot** Defendant's Jonathon Mark Morgan's Motion to Dismiss Plaintiff's Claims Under Rule 12(b).

**It is so ordered** this 15th day of November, 2011.

Sam A. Lindsay
United States District Judge